## SIMS v. UNITED STATES.
### Civ. No. 203.

United States District Court
M. D. Tennessee, Columbia Division.
Jan. 7, 1952.

Frierson & Queener, of Columbia, Tenn., for plaintiff.

James M. Swiggart, Asst. U. S. Atty., Nashville, Tenn., for defendant.

DAVIES, District Judge.

### Findings and Conclusions.

The above entitled cause was heard before the Court on December 14, 1951.

The cause was submitted upon the pleadings, evidence, exhibits, and argument of counsel for plaintiff and defendant, and, after due consideration thereof, the Court enters its Findings of Fact and Conclusions of Law, as follows:

### Findings of Fact.

1. On November 7, 1941, Raymond Sims entered the military service of the United States and upon his application was issued $1,000 National Service Life Insurance under Certificate N–691067, effective December 1, 1941, and $9,000 additional insurance under Certificate N–2769930, effective May 1, 1942. As to both certificates the plaintiff Lizzie Sims, the veteran's mother, was principal beneficiary and Robert Sims, his father, was contingent beneficiary. Premiums were paid through September 30, 1945, but not thereafter.

2. The said veteran, Raymond Sims, was discharged from the military service on September 14, 1945, and died on March 9, 1947, at a private hospital in Tampa, Florida, while on a weekend pass from the Veterans Administration Hospital at Bay Pines.

3. On April 5, 1945, the deceased Raymond Sims sustained a gunshot wound through his chest in line of duty. He re-

mained in the Army Hospitals from April 5, 1945, until September 11, 1945.

4. On September 1, 1945, Brooke Convalescent Hospital, Fort Sam Houston, Texas, reported Raymond Sims' physical condition as follows: "He is considered unfit for overseas assignment. He has the following defects which require special consideration in his assignment: Pleuritis, right chest, fibrinous, chronic, secondary to wound, perforating, severe, chest, right. . . . In view of the above he is considered unfit for the following types of duty: field duty, prolonged standing, walking, marching or drilling; violent calisthenics, heavy lifting."

5. Upon his return home from the Army he was advised by his family physician that he was not physically fit to seek employment and that he should try to enter a Veterans Administration Hospital.

6. On December 3, 1945, Raymond Sims was examined by the Veterans Administration Hospital and his disability rating was 10% for gunshot wound and 10% for psychoneurosis, mild, residuals of combat fatigue.

7. From September 14, 1945, until February, 1946, the deceased Raymond Sims was unable to do any work or hold any gainful employment because of his physical condition.

8. Raymond Sims' parents and their younger children had been at least partially dependent upon the deceased Raymond Sims before and during his military service and their continued dependency upon him from the time of his discharge until his death and his own financial condition made it an economic necessity for him to attempt to work, although he was in no condition physically to do so.

9. The deceased Raymond Sims did work from February, 1946, until about the last of January, 1947, although he was un-able to work about one half of that time and suffered from pain in his chest, shortness of breath, severe headaches, dizziness, and nausea. This work was due to economic necessity in spite of his health.

10. The deceased Raymond Sims was admitted to Municipal Hospital in Tampa, Florida, in February, 1947, from which he was transferred to the Veterans Administration Hospital at Bay Pines because of his financial condition. He died on March 9, 1947, while on leave from the Bay Pines Hospital.

11. From September 14, 1945, until March 9, 1947, the deceased Raymond Sims suffered from the effects of a gunshot wound through his chest and a brain disease which was either a brain tumor or abscess and was continuously and totally disabled, which condition continued for a period of more than six months and which commenced subsequent to the dates of his applications for insurance and while the insurance was in force.

Conclusions of Law.

1. Under the circumstances, the work record of the deceased Raymond Sims does not preclude the plaintiff from recovery.

2. The deceased Raymond Sims was entitled to a waiver of premiums from September 30, 1945, until his death on March 9, 1947, because of his disability and upon the application of his father, a contingent beneficiary.

3. The National Service Life Insurance in the amount of $10,000 represented by Certificate N–691067 and Certificate N–2769930 was in full force and effect at the death of the insured Raymond Sims and the principal beneficiary, the plaintiff, is entitled to the benefits thereof.

Judgment accordingly.